**The PEOPLE of the State of Colorado, Complainant,**

v.

**Robert Anthony FLORES, Attorney–Respondent.**

**No. 88SA411.**

Supreme Court of Colorado, En Banc.

April 10, 1989.

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

Robert Anthony Flores, pro se.

QUINN, Chief Justice.

In this grievance proceeding, the respondent, Robert Anthony Flores, was charged with professional misconduct in three separate complaints filed with the Grievance Committee. A hearing board of the Grievance Committee found by clear and convincing evidence that the respondent had engaged in various acts of unprofessional conduct and recommended that he be suspended from the practice of law for ninety days. A hearing panel of the Grievance Committee approved the hearing board's findings and recommendation. We now adopt the factual findings of the Grievance Committee, but reject the recommended sanction as too lenient. We enter an order of suspension for one year and one day.

## I.

The respondent was admitted to the practice of law in this state in 1980 and is subject to the jurisdiction of this court and its Grievance Committee. The three separate grievance complaints were filed in January 1987, April 1987, and June 1987. The complaints were consolidated for hearing, and a hearing was conducted by a hearing board during three days in February 1988.

### A. *The Mount Matter*

The first complaint alleged two counts of unprofessional conduct arising out of the respondent's representation of Alan Mount in two criminal cases. Mount was charged in the district court of El Paso County with sexual assault and habitual criminal charges. The respondent quoted Mount a fee of $10,000 for representation through trial. Mount and his girlfriend, Mary Ann Clettenberg, signed a promissory note which provided for an initial payment of $3,000 on March 5, 1986, and monthly installments of $1,166.66 until paid in full. The promissory note was secured by a deed of trust on real property owned by Clettenberg.

The respondent was Mount's third attorney, and because the trial of one of the cases was set a few days after the respondent was retained, the respondent obtained a continuance of the trial until May 19, 1986. Mount was free on bail on the criminal charges, and on April 29, 1986, the district attorney filed a motion to increase Mount's $8,000 bail because of Mount's alleged attempt to intimidate a prosecution witness. In preparation for the bail hearing, the respondent met with Mount and Clettenberg, but during the meeting an argument developed over the respondent's handling of the case. At the bail hearing on May 5, 1986, the respondent asked the court for permission to withdraw because of serious differences with Mount. Although Mount did not object to the respondent's withdrawal, the court required that the bail hearing proceed. Mount accordingly agreed that the respondent could continue to represent him during the hearing. At the conclusion of the hearing, Mount's bail was increased from $8,000 to $25,000 and Mount was remanded to jail.

As of May 5, 1986, Mount and Clettenberg were almost current on their payments on the promissory note, having paid $5,316.66. After the hearing on that date Clettenberg requested the respondent to release his deed of trust on her property so that she could use the property as security for the larger bail in order to obtain Mount's release from jail. The respondent,

however, refused to release the deed of trust, and Mount remained in jail on the pending criminal charges.[1]

After the respondent's refusal to release the deed of trust, Clettenberg filed a request for investigation with the Grievance Committee. The respondent was informed of the request on May 13, 1986, and was instructed to file an answer within twenty days, but delayed filing an answer until July 31, 1986. On that same date he wrote a letter to Clettenberg, stating that if she made one more payment on the promissory note he would release the deed of trust. Clettenberg was unable to make the payment, and the deed of trust was never released.

After Clettenberg filed a request for investigation with the Grievance Committee, the Grievance Committee investigator made numerous requests of the respondent to produce his case file and to estimate the amount of time he spent on Mount's case. The respondent, however, refused to do so until December 1986, when he produced his file.

■ Based on these facts, the hearing board concluded that, while the fee received by the respondent for the work he did on behalf of Mount was not excessive, the respondent's insistence on an additional payment as the price for releasing the deed

of trust did constitute the charging of a clearly excessive fee in violation of DR 2–106(A). The hearing board also concluded that the respondent's conduct in refusing to release the deed of trust so that Clettenberg could post the property for bail and obtain Mount's release was an intentional act that caused prejudice or damage to Mount in violation of DR 7–101(A)(3). It was also the conclusion of the hearing board that the respondent's delay in responding to the request for investigation and his repeated failure to comply with the Grievance Committee investigator's request for information on the amount of time spent in representing Mount violated C.R.C.P. 241.6(7) and constituted conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5).[2]

## B. *The Laremont–Lopez Matter*

The second complaint alleged unprofessional conduct based on the respondent's representation of Doctor Laremont–Lopez, a physician licensed in Mexico and Panama, in connection with a worker's compensation claim based on a work related injury that Laremont–Lopez sustained on October 27, 1984. When the doctor contacted the respondent he advised her to continue her medical treatment until the extent of her permanent disability could be determined. Doctor Laremont–Lopez contacted the re-

1. Mount, represented by a different lawyer, went to trial on the charges in early 1987, was convicted, and was sentenced to a term of twenty years to life.

2. In the *Mount* matter the respondent was also charged with dishonesty, fraud, deceit, or misrepresentation in violation of DR 1–102(A)(4), handling a legal matter without adequate legal preparation in violation of DR 6–101(A)(2), neglect of a legal matter in violation of DR 6–101(A)(3), intentionally failing to seek the lawful objectives of his client through reasonably available means permitted by law in violation of DR 7–101(A)(1), and failing to carry out a contract of employment in violation of DR 7–101(A)(2). The basis of the dishonesty or misrepresentation allegation was an alleged statement by the respondent to Mount and Clettenberg that he had filed some pretrial motions on Mount's behalf. The hearing board determined that the evidence failed to support this allegation, and we agree with the hearing board's determination. The hearing board likewise de-

termined, correctly in our view, that the evidence was insufficient to support the allegations with respect to inadequate preparation, neglect, and failing to seek the lawful objectives of his client. The respondent testified before the Grievance Committee that he had spent approximately sixty hours on the case. Moreover, the attorney who succeeded the respondent in representing Mount testified at the grievance hearing that the respondent's file was well organized and complete and that the respondent's failure to file any motions did not hinder Mount's defense. With respect to the allegation that the respondent's withdrawal from Mount's case constituted a failure to carry out a contract of employment in violation of DR 7–101(A)(2), the hearing board correctly determined that the evidence was insufficient to sustain that allegation. The respondent informed the court at the bond hearing on May 5, 1986, that his request to withdraw was based on serious differences with his client over his handling of the case, and Mount agreed to the request to withdraw at the conclusion of the bond hearing.

spondent in June 1985, and the respondent informed her that she should obtain a written medical report describing her permanent partial disability. After undergoing an examination by Doctor Blixt on June 18, 1985, Doctor Laremont–Lopez mailed a letter describing the examination to the respondent. The respondent then informed her that the letter from Doctor Blixt was what he needed to proceed on her claim. On June 21, 1985, Doctor Laremont–Lopez signed a contingent fee agreement with the respondent and executed two authorizations for release of medical information. The respondent informed the doctor that he would schedule a hearing on the worker's compensation claim, and the doctor then returned to Virginia in June 1985.

After her return to Virginia, Doctor Laremont–Lopez telephoned respondent on numerous occasions and left messages at his office, but the respondent failed to return her calls. The doctor also wrote two letters to the respondent in which she inquired about the status of her case and placed telephone calls to the respondent's home. The respondent, however, failed to answer the letters or to communicate with the doctor. In April 1986 Doctor Laremont–Lopez filed a statement with the Industrial Commission in which she described her injury and identified the respondent as her attorney.

On April 16, 1986, Doctor Laremont–Lopez filed a request for investigation with the Grievance Committee. Shortly thereafter the respondent telephoned the doctor —his first communication with his client since June 1985—and asked her if she still wanted a hearing on her worker's compensation claim. The doctor stated that she did and desired the respondent to handle the case. The respondent, however, failed to enter an appearance in the worker's compensation matter, and the claim was ultimately dismissed.

The hearing board concluded that the respondent neglected a legal matter entrusted to him in violation of DR 6–101(A)(3), that he failed to seek the lawful objectives of his client through reasonably available means in violation of DR 7–101(A)(1), and that he failed to carry out a contract of employment for professional services with a client in violation of DR 7–101(A)(2).

## C. *The Cuevas Matter*

The third grievance complaint alleged unprofessional conduct arising out of the respondent's representation of Julio Cuevas in a criminal appeal. Cuevas was convicted of three counts of attempted second degree murder and one count of engaging in a riot, and was sentenced to a term of nine and one-half years on May 10, 1985. The respondent filed a motion for a new trial and later a notice of appeal in the court of appeals. The Public Defender's office was thereafter appointed to handle the appeal, but on October 4, 1985, the Public Defender's office was permitted to withdraw. The trial court then appointed the respondent to represent Cuevas on his appeal.

After a substantial delay due to the inability of the court reporter to complete a transcript, the record was filed with the court of appeals on April 7, 1986, and the respondent was informed that his opening brief was due on May 19, 1986. On that date the respondent moved for additional time and was granted an extension to July 17, 1986, but failed to file an opening brief within that time. On August 18, 1986, the respondent again sought and obtained an extension until October 3, 1986. In spite of the fact that this last extension contained the notation "no further extensions," the respondent filed two more requests for extensions.

On November 26, 1986, the court of appeals ordered the respondent to show cause why the appeal should not be dismissed with prejudice, and on December 12, 1986, the respondent filed a motion requesting the court to maintain the case on the docket. The respondent finally filed his opening brief on January 8, 1987, and in June 1987 the court of appeals affirmed the judgment of conviction.

In December 1986 Cuevas filed a request for investigation with the Grievance Committee. An investigator of the Grievance Committee contacted the respondent on De-

cember 18, 1986, and requested additional information on the *Cuevas* matter. The respondent failed to answer the request. Additional written requests for information were sent to the respondent, who again failed to respond.

The hearing board concluded that the respondent's delay in filing a brief with the court of appeals was conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5), that the respondent neglected a legal matter entrusted to him in violation of DR 6–101(A)(3), that the respondent intentionally failed to seek the lawful objectives of his client in violation of DR 7–101(A)(1), and that he failed to cooperate with the Grievance Committee in violation of C.R.C.P. 241.6(7).

## II.

In determining the appropriate sanction in this case, the hearing board considered the respondent's testimony that he had been distracted from the practice of law due to his problems with two teenage sons and a custody dispute with his former wife. *See ABA Standards for Imposing Lawyer Sanctions* § 9.32(c) (mitigating factors include personal or emotional problems). However, the hearing board weighed against the mitigating factors the multiple acts of unprofessional conduct committed by the respondent and his obstruction of the disciplinary process. *See ABA Standards for Imposing Lawyer Sanctions* § 9.22 (aggravating factors include a pattern of misconduct, multiple offenses, and obstruction of the disciplinary proceeding by intentionally failing to comply with applicable rules).

After weighing the respective mitigating and aggravating factors, the hearing board recommended that the respondent be suspended from the practice of law for a period of ninety days, that he be assessed the costs of the grievance proceedings in the amount of $1,765.50, and that he record the appropriate documents for the release of the deed of trust on the Clettenberg property. The disciplinary counsel filed objections to the hearing board's recommendation of discipline as too lenient, but a hear-

ing panel of the Grievance Committee approved the findings and recommendation of the hearing board.

After the report of the Grievance Committee was filed in this court, we issued an order directing the respondent to show cause in writing within twenty days why more severe discipline should not be imposed and, if so imposed, what that discipline should be. The respondent failed to respond to this court's order.

## III.

The recommendation of the Grievance Committee concerning discipline is advisory only, and it is this court's independent responsibility to determine the appropriate form of discipline suitable to the circumstances of this case. *See, e.g., People v. Davis,* 768 P.2d 1227 (Colo.1989); *People v. Morley,* 725 P.2d 510 (Colo.1986). We conclude that the Grievance Committee's recommended discipline in this case is excessively lenient and must be rejected. While we have no disagreement with suspension as the appropriate form of discipline in this case, *see ABA Standards for Imposing Lawyer Sanctions* § 4.42 (suspension generally appropriate when lawyer knowingly fails to perform service for client, or engages in pattern of neglect, and causes injury or potential injury to client); § 6.22 (suspension appropriate when lawyer fails to comply with court order or rule, and causes injury or potential injury to client, or causes interference or potential interference with legal proceeding), we cannot accept the recommended ninety-day term of suspension.

The respondent's unprofessional conduct in this case was not an isolated incident, but rather extended over a considerable period of time and constituted a gross deviation from the basic responsibilities owed by a lawyer to a client, to the court, and to the Grievance Committee. In the *Mount* matter the respondent intentionally damaged his client by refusing to release the deed of trust on property that otherwise could have been used to secure Mount's release from jail. In the *Laremont–Lopez* matter the respondent continually neglect-

ed his client's request for information on her worker's compensation claim in a rather callous disregard of his client's interests. In the *Cuevas* matter the respondent cavalierly disregarded filing deadlines set by the court in a criminal appeal. During the investigative stage of the grievance proceedings the respondent repeatedly failed to comply with the reasonable requests of the Grievance Committee investigator with respect to the matters under investigation. Finally, the respondent simply ignored the order of this court directing him to show cause why more severe discipline should not be imposed.

The deplorable and continuous nature of the respondent's unprofessional conduct warrants a suspension for a period of no less than one year and one day. To impose any less severe sanction, in our view, would unduly expose potential clients to the same risks of professional misconduct before the respondent has successfully demonstrated bona fide rehabilitation and, furthermore, would depreciate the seriousness of the misconduct in the eyes of both the public and the legal profession. *See ABA Standards for Imposing Lawyer Sanctions* § 2.3 commentary.

The respondent is accordingly suspended from the practice of law for a period of one year and one day, effective thirty days after the date of this opinion. The respondent is ordered to comply with the provisions of C.R.C.P. 241.21 relating to the termination of all legal matters, the giving of notice to all clients and opposing counsel, and the maintenance of appropriate records as proof of compliance. It is further ordered that the respondent immediately execute and record any documents necessary to release the deed of trust which he presently holds on the real property of Mary Ann Clettenberg.

Any application for reinstatement must be supported by clear and convincing evidence that the respondent is fit to practice law and has complied with the requirements of C.R.C.P. 241.22. The respondent is ordered to pay the costs of these grievance proceedings in the amount of $1,765.50 by tendering such sum to the Grievance Committee, 600 Seventeenth Street, 500–S Dominion Plaza, Denver, Colorado, 80202, within ninety days of this date.