The PEOPLE of the State of
Colorado, Complainant,

v.

Paul Allen BARBER,
Attorney–Respondent.

No. 89SA498.

Supreme Court of Colorado,
En Banc.

Oct. 29, 1990.

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick and Jay P.K. Kenney, Asst.

Disciplinary Counsels, Denver, for complainant.

Paul Allen Barber, Colorado Springs, pro se.

PER CURIAM.

This is an attorney discipline case. A hearing board found that the respondent handled a legal matter without adequate preparation, neglected legal matters entrusted to him, failed to seek the lawful objectives of his clients through reasonably available means, intentionally prejudiced or damaged his clients during his representation of them, and that the respondent's conduct amounted to gross neglect. The hearing board also found the presence of four aggravating factors, including prior disciplinary offenses, and no mitigating factors. The board recommended that the respondent be suspended from the practice of law for six months and that the costs of the proceedings be assessed against him.

A majority of the hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of the hearing board. Two members of the panel favored suspension for a year and a day. Were it not for certain mitigating factors, we would impose a longer period of suspension. Given the seriousness of the charges, and the respondent's prior disciplinary record, but also taking mitigating circumstances into account, we conclude that suspension for six months is warranted. Some members of the court would impose more severe discipline.

## I.

■ The factual findings of the hearing board are binding on us unless, after consideration of the record as a whole, we conclude that the findings are clearly erroneous and unsupported by substantial evidence. *People v. Bergmann*, 790 P.2d 840, 842 (Colo.1990). The record in this case amply supports the hearing board's findings of fact which are as follows.

The respondent was admitted to the bar of this court on September 22, 1952, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court in these proceedings. C.R.C.P. 241.1(b).

In March 1983, Gary and Marilyn Schmit purchased a home in Colorado Springs from Park West Homes, Inc. On May 17, 1983, Marilyn Schmit was seriously injured when a kitchen cabinet, full of dishes and glassware, fell from the wall and struck her on the head, neck, and shoulder. The cabinet had been installed in the house by a subcontractor, Richard Beachy, who, through his liability insurance carrier, admitted liability for the accident by letter dated June 20, 1983. The Schmits had complaints about other alleged defects in the construction of the house,[1] and when Park West did not correct the major problems, the Schmits sought an attorney who would handle both the personal injury and defective construction claims. The Schmits testified that, before contacting the respondent, they rejected several attorneys who only wanted the personal injury claim.

On June 15, 1984, the Schmits retained the respondent to handle both claims, and signed two separate written contingency fee agreements. Between June 1984 and October 1985, a fifteen month period, the respondent made no formal presentation of either claim, notwithstanding the admission of liability in the letter of June 20, 1983, from Beachy's liability insurance carrier. On October 17, 1985, two years and five months after Marilyn Schmit's injury, the respondent sent a claim letter to Beachy's liability carrier, and submitted medical bills totalling over $5,000. The respondent offered to settle the Schmits' claim for $85,-000.

Before the hearing board, the respondent testified that he spent the time between

---

1. Gary Schmit testified that, among other problems, the house did not meet the applicable building code requirements because it was not bolted down to the foundation, the house and foundation were not sealed so as to be rodent, insect, and weather proof, the walls were not anchored properly to the floor, the insulation package was not as stated in the purchase agreement, the outside walls did not have fire breaks, and the sill plate was neither pressure-treated nor decay-resistant, as required by the Veterans Administration.

June 1984 and October 1985 gathering additional medical diagnoses and bills, but his own summary of medical reports indicates that all of the medical reports mentioned in his October 17, 1985 letter, except one, were dated no later than January 1985.

By March of 1985, the Schmits had become angry and impatient because the respondent had filed neither lawsuit. The respondent testified that he had adopted a conscious strategy of building up the personal injury case before submitting it to the carrier for settlement or filing suit. However, the respondent failed to adequately communicate his strategy to the Schmits in order to obtain their informed consent.

The respondent stated that he advised the Schmits that the defective construction claim could not be pursued until they hired an expert witness, and that the Schmits lacked the necessary funds. Gary Schmit testified that they told the respondent they could obtain the necessary funds to hire the expert, but that the respondent never pursued the matter. The respondent testified that it was his plan to fund the defective construction claim from the proceeds of the personal injury settlement. If this strategy in fact existed, it was not adequately communicated to the Schmits.

The respondent put the Schmits off with oral explanations but never wrote them to ensure that they understood and agreed with his strategies. In early December 1985, the respondent told Gary Schmit that the personal injury suit would be filed before the end of the year, or by January 1, 1986. Schmit asked the respondent if there was any statute of limitations problem, and it was at this point, two years and seven months after Marilyn Schmit's injury, that the respondent took his first look at the statute of limitations. The respondent concluded that the two year limitations period contained in section 13–80–127, 6 C.R.S. (1973 & 1983 Supp.) did not apply to Marilyn's injury because it did not specifically mention "subcontractors," and because a federal district judge had declared the statute unconstitutional.[2] Somewhat inconsistently, the respondent decided that section 13–80–127 did apply to the defective construction claim, but that the limitations period would not begin to run until an expert was hired who diagnosed the cause of the defect.

The respondent did not file the personal injury action by January 1, 1986. In December 1985, Marilyn Schmit was hospitalized and under care as an outpatient of the Colorado Springs Pain Clinic until February 1986. From February until July 1986, the respondent claimed that he was engaged in another lawsuit with nationwide implications, and that this lawsuit occupied his full attention. In March 1986, the respondent received a settlement offer of $20,000 from Beachy's carrier, which he testified he relayed to the Schmits and they refused. The respondent believed that Marilyn Schmit's claim was worth at least

---

2. Section 13–80–127, 6 C.R.S. (1973 & 1983 Supp.), provided, in relevant part:

**Limitations of actions against architects, contractors, builders and builder vendors, engineers, inspectors, and others.** (1)(a) All actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(b) A claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature.

(c) Such actions shall include any and all actions in tort, contract, indemnity, or contribution or other actions for the recovery of damages for:

(I) Any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property; or

(II) Injury to real or personal property caused by any such deficiency; or

(III) Injury to or wrongful death of a person caused by any such deficiency.

Section 13–80–127 was repealed and reenacted in somewhat different form in 1986. The present version is § 13–80–104, 6A C.R.S. (1986).

$80,000 to $100,000. The Schmits deny that the respondent ever communicated the $20,000 offer to them.

In April 1986, the respondent told the Schmits that he intended to file the personal injury complaint on June 1, 1986. When that date came and went, and no lawsuit was filed, the Schmits discharged the respondent by letter dated June 23, 1986, due to his "lack of interest, irresponsibility, failure to fulfill obligations and commitments in the time frames [the respondent] quoted, [and] failure to return phone calls...."

The Schmits retained another attorney, and after being advised that the statute of limitations had probably run on Marilyn Schmit's injury claim, the Schmits settled the personal injury claim for $21,000. Their new attorney did not agree to pursue the defective construction claim.

## II.

The hearing board concluded that the respondent's conduct violated DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to him without adequate preparation under the circumstances); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means); and DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship). In addition, the hearing board found that the respondent's conduct amounted to gross negligence in violation of C.R.C.P. 241.6(4). Finally, the respondent violated DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule), and C.R.C.P. 241.6(1) (violation of a provision of the Code of Professional Responsibility constitutes grounds for discipline).

We conclude that the hearing board correctly found by clear and convincing evidence that the respondent's conduct violated all of the above provisions of the Code of Professional Responsibility. The respondent's pattern of inaction in the face of a serious statute of limitations problem and against the wishes of his clients was unreasonable in the extreme. Liability for the personal injury claim was apparently admitted and the only question was the extent of damages. The respondent initially justified his position that section 13–80–127 was inapplicable to his clients' injury because the statute did not expressly name "subcontractors" as members of the protected class. He has cited no case, however, that has held or even implied that a defendant that otherwise satisfied the requisites of section 13–80–127 could not claim its protections because the defendant was a "subcontractor."

Before the hearing board, the respondent argued that section 13–80–127 did not apply to bar Mrs. Schmit's claim because in May of 1983, when the claim arose, section 13–80–127 was unconstitutional under the authority of *McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334 (D.Colo. 1980). The respondent presses the same argument in this court.

In 1982, however, we held that the statutory predecessor to section 13–80–127, 6 C.R.S. (1973 & 1983 Supp.), did *not* violate the federal or state constitutions, and we expressly disagreed with the holding in *McClanahan. Yarbro v. Hilton Hotels*, 655 P.2d 822, 828 & n. 8 (Colo.1982). In *Criswell v. M.J. Brock & Sons, Inc.*, 681 P.2d 495 (Colo.1984) (decided before the Schmits retained the respondent), we upheld the version of section 13–80–127 applicable in 1983 on the authority of *Yarbro* because we found the two statutes "substantially similar." *Criswell*, 681 P.2d at 498. We again pointed out our refusal to follow *McClanahan. Id.* at 498 n. 8.

■ It is objectively unreasonable for the respondent to claim reliance on a federal district court decision with which this court expressly disagreed on the precise point of Colorado law raised here. It is the respondent's theory, however, that until this court decided *Criswell*, section 13–80–127 was unconstitutional under the doctrine of the "law of the case."

■ The United States Supreme Court has appellate jurisdiction over federal questions arising in both state and federal

**940**

courts. Under the Supremacy Clause, its decisions on federal law bind all lower state and federal courts. *United States ex rel. Lawrence v. Woods*, 432 F.2d 1072, 1073–74 (7th Cir.1970), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971); *California Co. v. State*, 141 Colo. 288, 311, 348 P.2d 382, 394, *appeal dism'd*, 364 U.S. 285, 81 S.Ct. 42, 5 L.Ed.2d 37 (1960). Lower federal courts .do not have appellate jurisdiction over state courts and their decisions are not conclusive on state courts, even on questions of federal law. *Woods*, 432 F.2d at 1076; *People v. Kokoraleis*, 132 Ill.2d 235, 292–94, 138 Ill.Dec. 233, 260–61, 547 N.E.2d 202, 229–30 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3296 (1990); *see, e.g., Gallegos v. Phipps*, 779 P.2d 856, 863 n. 13 (Colo.1989) (declining to follow *Giebink v. Fischer*, 709 F.Supp. 1012 (D.Colo.1989)); *Yarbro*, 655 P.2d at 828 n. 8 (disagreeing with *McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334 (D.Colo.1980)).[3]

■ None of the doctrines collected under the rubric "law of the case" applies here. *See generally People v. Roybal*, 672 P.2d 1003, 1005 & n. 5 (Colo.1983). A decision by a federal district court does not constitute the "law of the case" unless the federal court has exercised jurisdiction over the parties and subject matter of the controversy at hand. *See Woods*, 432 F.2d at 1076. These principles are elementary. According to the respondent, his contrary conclusion was based only on a cursory examination of the annotations to section 13–80–127. Even if we were to believe the respondent, given the time available and the urgings of his clients to proceed, legal research which was so obviously inadequate on a question of such magnitude would constitute gross negligence within the meaning of C.R.C.P. 241.6(4).

There was no reasonable basis for the respondent to believe that it was safe to proceed as if section 13–80–127 did not apply because of the *McClanahan* decision.

We agree with the hearing board that the respondent's theories of the inapplicability of section 13–80–127 were actually "post hoc rationalizations by a lawyer who discovered he had unnecessarily exposed his clients to the risk of having their claims barred by a statute of limitations defense."

■ The respondent contends that the evidence is insufficient to support a finding of gross negligence or intentional prejudice or damage to the Schmits. Inaction in the face of the duty to proceed constitutes neglect. Continued and chronic neglect over a period of two years must be considered willful. *People v. May*, 745 P.2d 218, 220 (Colo.1987).

■ The respondent's willful conduct exposed his clients unnecessarily to the risks of a successful statute of limitations defense against their expressed wishes that a complaint be filed. Although the respondent disputes this, the Schmits testified that, at their urging, the respondent promised on more than one occasion to file the personal injury suit, but no action was ever commenced. The hearing board resolved this conflict against the respondent and its resolution is supported by substantial evidence in the record. The Schmits were obliged to settle for an amount far below the value attached to the personal injury claim by the respondent himself.

In addition, no negotiations were ever undertaken and no lawsuit was ever filed with respect to the deficiencies alleged in the Schmit home. The respondent's theory that the statute of limitations could be indefinitely tolled by the simple expedient of not hiring an expert, although the Schmits told the respondent about the nature of the defects, was dangerously flawed. A claim under section 13–80–127 accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the *defect* in the improvement which ultimately causes the injury. § 13–80–127(1)(b), 6 C.R.S. (1973 & 1983 Supp.); *Financial Assocs., Ltd. v. G.E.*

3. The decision of one federal district court judge that a statute is unconstitutional does not even bind another federal judge in the same district. *See Cudahy Co. v. Ragnar Benson, Inc.*, 514

F.Supp. 1212 (D.Colo.1981) (holding § 13–80–127 constitutional and declining to follow *McClanahan* ).

*Constr. Co.,* 723 P.2d 135, 138 (Colo.1986); *Criswell,* 681 P.2d at 498 (decided before the Schmits retained the respondent).

### III.

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *ABA Standards* 4.42. The hearing board found the following aggravating factors to be present: (1) a prior record of discipline consisting of four letters of admonition (three of which involved neglect of legal matters), *ABA Standards* 9.22(a); (2) a pattern of misconduct (neglect), *ABA Standards* 9.22(c); (3) refusal to acknowledge the wrongful nature of conduct, *ABA Standards* 9.22(g); and (4) substantial experience in the practice of law, *ABA Standards* 9.22(i). The board found none of the mitigating factors listed in *ABA Standards* 9.32 to be present.

■ We find that the hearing board's determination on the existence of the aggravating factors is supported by clear and convincing evidence and is correct. The respondent contends that the prior disciplinary offenses are remote in time and thus constitute a *mitigating* factor. We disagree. The first letter of admonition was issued in 1973, two letters of admonition were issued in 1977, and the last admonition was sent in 1981, only three years before the respondent commenced his representation of the Schmits. In the 1981 letter of admonition, the respondent was cautioned that "more severe sanctions are likely to ensue should you again neglect your legal matters entrusted to you by your clients." These four prior disciplinary offenses properly were considered in aggravation. *See People v. Good,* 790 P.2d 331, 332 (Colo.1990) (misconduct occurring fifteen to twenty years before present proceeding, also involving neglect, was relevant to discipline to be imposed).

■ The recommendation of the grievance committee concerning discipline is only advisory and this court has the independent responsibility to determine appropriate discipline. *People v. Flores,* 772 P.2d 610, 614 (Colo.1989). In the absence of any mitigating factors, we would reject the recommended six-month suspension as too lenient. *See, e.g., People v. Bergmann,* 790 P.2d 840 (Colo.1990) (failure to file personal injury claim on behalf of clients which results in running of statute of limitations warrants three-year suspension); *People v. Yaklich,* 744 P.2d 504 (Colo.1987) (neglect of important matter and failure to carry out client's objective warrants two-year suspension); *People v. Lloyd,* 696 P.2d 249 (Colo.1985) (pattern of neglecting legal work for clients warrants suspension for one year and one day).

The board heard testimony from the attorney retained by the Schmits after they discharged the respondent that his reputation in the legal community was generally good. *See ABA Standards* 9.32(g) (character or reputation of the attorney may be considered in mitigation). In addition, there was no evidence of a dishonest or selfish motive on the respondent's part. *See ABA Standards* 9.32(b) (absence of dishonest or selfish motive may be considered in mitigation).

Although the question is very close, taking the aggravating and mitigating factors into account, we conclude that suspension for the period recommended by the grievance committee is appropriate. *See, e.g., People v. May,* 745 P.2d 218 (Colo.1987).

### IV.

It is hereby ordered that Paul Allen Barber be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. C.R.C.P. 241.-21(a). It is further ordered that Barber pay the costs of this proceeding in the amount of $924.04 within sixty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600

Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80203.

VOLLACK, J., does not participate.