The **PEOPLE** of the State of Colorado, Complainant,

v.

Michael C. **GAIMARA,**
Attorney–Respondent.

No. 91SA17.

Supreme Court of Colorado,
En Banc.

May 13, 1991.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Michael C. Gaimara, pro se.

## PER CURIAM.

The hearing panel of the Supreme Court Grievance Committee recommended that the respondent in this attorney discipline case be suspended from the practice of law for thirty days. The respondent was charged with neglecting a legal matter; dishonesty, fraud, deceit, or misrepresentation; engaging in conduct that adversely reflected on his fitness to practice law; and obstruction of the grievance committee proceedings. After considering the recommendation of the panel we ordered the respondent to show cause why more severe punishment should not be imposed. After considering the respondent's answer, the reply of the disciplinary counsel, the gravity of the charged misconduct, and weighing the factors in aggravation against those in mitigation, we decline to follow the recommendation of the hearing panel and order that the respondent be suspended for six months and pay the costs of these proceedings.

## I

The respondent was admitted to the bar of this court on May 25, 1983, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b).

The complaint filed by the deputy disciplinary counsel contained two counts. Count I charged the respondent with violations of DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on his fit-ness to practice law); DR 6-101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him); as well as C.R.C.P. 241.6 (grounds for lawyer discipline); and DR 1-102(A)(1) (a lawyer shall not violate a disciplinary rule). Count II alleged violations of DR 1-102(A)(1), DR 1-102(A)(4), DR 1-102(A)(6), and C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties constitutes ground for lawyer discipline).

The disciplinary counsel and the respondent entered into an unconditional stipulation of facts and admission of misconduct. Based on this stipulation and testimony from the complaining witness, Roger L. Stiehl, and the respondent, the hearing board found that the following facts and conclusions had been established by clear and convincing evidence.

## A

### Count I

Stiehl worked for a Denver ambulance service from late 1984 through early 1986. In July 1985, Stiehl filed a complaint with the Wage and Hour Division of the United States Department of Labor (the Department) alleging that he had been denied overtime pay improperly. The Department informed Stiehl that, although ambulance services were generally subject to the Fair Labor Standards Act, there was a complex exception for operations that affected the safety of motor vehicles traveling in interstate commerce. The Department launched an investigation, and by letter dated August 14, 1986, notified Stiehl that his employer disagreed with the investigation's findings and the matter had been referred to the Department's attorneys. Because resolution of the matter would be delayed, the Department advised Stiehl of his right to bring an independent civil action on the overtime claim.

Stiehl met with the respondent on August 20, 1986. The respondent wrote a demand letter to the ambulance service and received a reply denying liability in a letter

dated September 9, 1986. The respondent informed Stiehl of the employer's reply and Stiehl instructed the respondent to check on the time frame involved in the Department procedures.

During the remainder of 1986, the respondent had sporadic contact with Stiehl. He told Stiehl that he was monitoring periodically the progress of the Department's case. In January 1987, the respondent informed Stiehl that the matter had been sent to Washington for administrative proceedings and that resolution would take two to eight months.

In January and April 1987, Stiehl, troubled over the delay, discussed the possibility of filing a civil action with the respondent. The respondent advised against this course and urged Stiehl to await the determination of the Administrative Law Judge (ALJ). The respondent also told Stiehl that the decision of the ALJ would extend the statute of limitations for two years.

The respondent nonetheless agreed to prepare a civil suit in March 1988 when Stiehl became very concerned about the statute of limitations. He represented to Stiehl that an administrative decision affecting claims such as Stiehl's would be issued April 15, 1988, and that this decision would provide for a period of two years in which to file a claim. The respondent told Stiehl in April 1988 that he was conducting settlement negotiations with the ambulance service, and relayed certain offers and counteroffers.

On or about May 10, 1988, the respondent advised Stiehl that he had received on April 28 the decision of the ALJ dated April 15, 1988. In September 1988 the respondent urged Stiehl to lower the amount of his claim. Throughout the fall of 1988 and into March 1989, the respondent represented to Stiehl that he was conducting settlement negotiations with the ambulance service.

In fact, there was no ALJ decision related to Stiehl's claim in April 1988 or at any other time.[1] There were no settlement negotiations after the initial exchange of letters in 1986. The calculation of claim and settlement figures in 1988 was a charade. The respondent performed no substantial, legitimate work on Stiehl's case after September 1987. The deputy disciplinary counsel and the respondent have stipulated that the statute of limitations on Stiehl's claim ran sometime between October 1987 and March 1988.

The respondent admitted, and the hearing board found, that the respondent's conduct violated C.R.C.P. 241.6; DR 1-102(A)(1), DR 1-102(A)(4), DR 1-102(A)(6), and DR 6-101(A)(3). The hearing board also determined that this misconduct caused damage or potential damage to Stiehl because it prevented him from litigating his claim for back pay. Although it is uncertain whether Stiehl could have recovered on his claim, he might have received approximately $3,600 in back pay and an equivalent amount in penalties and interest.

B

*Count II*

The request for investigation in this proceeding was filed March 23, 1989. On May 30, 1989, the respondent told Stiehl and the grievance committee investigator that the ambulance service had agreed to accept Stiehl's previous $1,500 settlement offer. The respondent forwarded a release to Stiehl which Stiehl signed on June 26, 1989. On July 17, 1989, the respondent mailed a check to Stiehl which the respondent represented was from the settlement proceeds received. The respondent stated to the investigator that the settlement had been completed and sent the investigator a copy of the check.

The respondent told the investigator numerous times that the decision of the ALJ related to Stiehl's claim existed and would be provided to the grievance committee.

---

1. The respondent testified that his statement to Stiehl in March 1988 concerning an impending administrative decision was based on an article he read in a law-related journal. The board concluded that this explanation was unsatisfactory since the journal article made no mention of any extension of the statute of limitations for individual claims.

After several weeks in which the respondent purported to mail the decision to the grievance committee, the respondent advised the investigator that his secretary had mailed his only copy of the decision to the committee, and that it had apparently been lost in the mail. The respondent stated that he would obtain another copy from the Department in Washington, or through library research.

At a personal interview on June 30, 1989, the respondent related a detailed and extensive chronology of events, including his activities in the prosecution and settlement of Stiehl's claim during late 1987 through early 1989.

As related above, the ALJ decision never existed, and there were no settlement negotiations in 1987–1989. The "settlement" payment was made from the respondent's personal funds. The respondent's misrepresentations were made in an attempt to conceal the respondent's failure to prosecute Stiehl's claim. These misrepresentations substantially extended the duration of the grievance committee investigation, resulted in an unnecessary waste of time and resources, and posed a real danger of a miscarriage of justice had the misrepresentations not been detected.

The respondent admitted, and the hearing board concluded, that his conduct violated C.R.C.P. 241.6(7), DR 1–102(A)(1), DR 1–102(A)(4), and DR 1–102(A)(6).

## II

The hearing panel unanimously approved the recommendation of the hearing board that the respondent be suspended for thirty days. Neither the deputy disciplinary counsel nor the respondent excepted to this recommendation. The recommendation of

the grievance committee is advisory only, however, and this court bears the ultimate responsibility to determine the appropriate discipline. C.R.C.P. 241.15(c); *People v. Flores*, 772 P.2d 610, 614 (Colo.1989); *People v. Brown*, 726 P.2d 638, 640–41 (Colo. 1986).

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *ABA Standards* 4.42. Suspension is also appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to the client, *ABA Standards* 4.62. *See People v. Crimaldi*, 804 P.2d 863, 865 (Colo.1991) (attorney suspended for sixty days for neglect of legal matter and disregard of grievance committee proceedings). The question therefore is the appropriate length of suspension.

We find the following factors are present in aggravation: (1) a dishonest or selfish motive on the respondent's part in attempting to cover up his misconduct, *ABA Standards* 9.22(b); (2) a pattern of misconduct, *id.* at 9.22(c); (3) multiple offenses, *id.* at 9.22(d); and (4) the submission of false evidence, false statements, or other deceptive practices during the disciplinary process, *id.* at 9.22(f). In mitigation, the hearing board found: (1) the lack of a prior record of discipline, *id.* at 9.32(a); (2) the existence of emotional problems, *id.* at 9.32(c); and (3) a somewhat equivocal and ambiguous willingness to provide restitution,[2] *id.* at 9.32(d).

---

2. In what is described as a "clarification," the respondent has stipulated to this court that he will "fully compensate Roger L. Stiehl for the losses he incurred as a result of the fact that a case was not filed on his behalf, including wages, penalties and interest, less the $1,500.00 which he has already paid to Stiehl." The respondent has conditioned such restitution, however, on

    the event that it is finally determined by Courts having jurisdiction over the matter

that ambulance drivers were entitled to overtime pay for hours worked over forty hours per week during the time period relevant to this matter and if the claim of Roger L. Stiehl is not recovered and paid to him as a result of the Department of Labor or any court....

A conditional promise of this type is not in our opinion a sufficient "timely good faith effort to make restitution or to rectify consequences of misconduct." *See ABA Standards* 9.32(d).

We find the existence of only one mitigating factor: the absence of prior discipline. While the evidence in the record of the respondent's emotional problems may be relevant to the charges of neglect, they cannot excuse the respondent's intentional misrepresentations to his client and the grievance committee. Further, the respondent's willingness to make restitution did not surface until the full extent of his deception was revealed. We are unpersuaded that such a belated "willingness" to make restitution should be considered in mitigation.

The intentional misconduct and deception practiced by the respondent serve to distinguish this case from others in which we imposed a thirty-day suspension for simple neglect of client matters. *See, e.g., People v. Masson,* 782 P.2d 335, 336 (Colo.1989). The respondent's misconduct in this case is even more aggravated than in *Crimaldi,* 804 P.2d at 865–66, in which we rejected the panel's recommendation of a thirty-day suspension as too lenient. Considering the gravity and extent of the respondent's intentional misconduct, we conclude that a six-month suspension is warranted.

### III

It is hereby ordered that Michael C. Gaimara be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). It is further ordered that Gaimara pay the costs of this proceeding in the amount of $931.51 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.