The PEOPLE of the State of Colorado, Complainant,

v.

John C. MULVIHILL, Attorney–Respondent.

No. 90SA451.

Supreme Court of Colorado, En Banc.

June 3, 1991.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

B. Lawrence Theis, Denver, for respondent.

PER CURIAM.

A hearing panel of the Supreme Court Grievance Committee recommended that the respondent in this attorney discipline proceeding receive a private censure. The panel found that the respondent's conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 5–101(A) (except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of the client may be affected by his own financial, business, property, or personal interests). We ordered the respondent to show cause why more severe punishment should not be imposed. After considering the respondent's answer, the reply of the assistant disciplinary counsel, the gravity of the charged misconduct, and weighing the factors in aggravation against those in mitigation, we decline to follow the recommendation of the hearing panel and order that the respondent receive a public censure and pay the costs of these proceedings.

## I

The respondent was admitted to the bar of this court on December 1, 1953, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court in these proceedings. C.R.C.P. 241.1(b). The respondent and the assistant disciplinary counsel entered into an unconditional stipulation of facts. In addition to the stipulation, the hearing board received written exhibits and heard testimony regarding aggravating and mitigating factors. The hearing board found that the following facts were established by clear and convincing evidence.

In September 1982, the respondent was hired by Title U.S.A., a title insurance company, to serve as its regional counsel. The respondent's duties included title insurance claims, underwriting, marketing, and general management. One of the respondent's responsibilities was to refer litigation involving Title U.S.A. in the Rocky Mountain region to outside counsel. The law firm which was to become known as Silver & Hayes, and one of its partners, Jack Silver, handled some of the cases referred to outside counsel, and had done so for several years before the respondent was hired by Title U.S.A.

The respondent referred many new cases to Silver & Hayes. By early 1984 Silver & Hayes handled most of the cases that Title U.S.A. referred to outside counsel. During the same time period, Title U.S.A. reduced its Denver-based staff because of business reversals. The respondent began discussions in early 1984 with Jack Silver concerning the possibility of his joining Silver & Hayes in an of counsel or related capacity. These discussions culminated in the respondent entering into a "consulting agreement" with Silver & Hayes on February 14, 1984. The agreement provided that Silver & Hayes retained the respondent "to provide such services of an advisory or consultive nature as [Silver & Hayes] may reasonably request, so that [Silver & Hayes] may utilize the experience and knowledge, reputation and contacts of the [respondent]."

The original agreement was for six months and under its terms the respondent was paid $1,000 per month. Neither the respondent nor Jack Silver disclosed the existence or nature of the agreement to their mutual client, Title U.S.A. The respondent and Silver & Hayes entered into three separate addendums to the agreement extending the consulting relationship. Silver & Hayes continued to make monthly $1,000 payments to the respondent until December 1988. In addition, between 1985 and 1988, Silver & Hayes paid the respondent bonuses totalling $3,635. During the same time period, the respondent referred virtually all of Title U.S.A.'s Colorado cases, and some cases outside of Colorado, to Silver & Hayes. The respondent testified that he referred these cases to Silver & Hayes because of their work product and fee structure. Title U.S.A. became Silver & Hayes's largest client. Between 1984 and 1988, Title U.S.A. paid Silver & Hayes over $1.2 million in attorney's fees and

Silver & Hayes paid the respondent about $62,000.

In the fall of 1988, Title U.S.A. decided to consolidate its claims department in Houston, Texas, and by December 1988 the respondent was no longer in charge of referrals. An *ad hoc* committee on professional responsibility was formed at Silver & Hayes in September 1988, and the relationship between the respondent and the law firm came under review. In January 1989, Jack Silver met with the respondent and told him that the *ad hoc* committee was concerned about the propriety of the agreement, and the consulting arrangement was terminated on January 3, 1989. The respondent initially resisted disclosure of the agreement to Title U.S.A., but upon advice of counsel he notified Title U.S.A.'s general counsel on January 6, 1989, of the existence of the agreement. The respondent offered to pay the $62,000 he had received from Silver & Hayes to Title U.S.A. This offer was refused and officers of Title U.S.A. expressed their desire that the respondent continue his employment with the title company.

■ The respondent admitted, and we agree, that his conduct violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 5-101(A) (except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of the client may be affected by his own financial, business, property, or personal interests). We also specifically find that the respondent's conduct violated DR 5-105(A) (a lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be affected by the acceptance of the proffered employment, or which would be likely to involve him in representing differing interests, unless it is obvious he can represent the interests of each client, and both clients consent after full disclosure). Because of the foregoing, the respondent also violated DR 1-102(A)(1) (a lawyer shall not violate a disciplinary rule), and C.R.C.P.

241.6(1) (any act or omission violating the provisions of the Code of Professional Responsibility is grounds for attorney discipline).

## II

■ The hearing panel recommended that the respondent receive a private censure for his misconduct. The recommendation of the grievance committee is advisory only, however, and this court bears the ultimate responsibility to determine the appropriate discipline. C.R.C.P. 241.15(c); *People v. Flores,* 772 P.2d 610, 614 (Colo. 1989); *People v. Brown,* 726 P.2d 638, 640–41 (Colo.1986). Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), in the absence of aggravating or mitigating factors, a public censure is generally appropriate "when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." Although the hearing board did not find that Title U.S.A. had suffered actual damage by virtue of the respondent's agreement with Silver & Hayes, the potential for severe harm is manifest and inherent in agreements of this nature.

In addition to initially entering into the consulting arrangement with Silver & Hayes without full disclosure to Title U.S.A., the respondent continued to refer cases to Silver & Hayes and receive compensation from the law firm over a period of almost five years. The respondent concealed his relationship with Silver & Hayes and practiced this deception on Title U.S.A. for these five years although he had a continuing fiduciary duty to reveal the existence of the agreement. *Compare ABA Standards* 4.62 (suspension is generally appropriate when a lawyer knowingly deceives a client and causes actual or potential injury to the client) *with ABA Standards* 4.63 (public censure is appropriate when a lawyer negligently fails to provide his client with accurate or complete infor-

mation, causing actual or potential injury to the client).

We find the existence of the following factors in aggravation: (1) a dishonest or selfish motive, *ABA Standards* 9.22(b); (2) a pattern of misconduct, *id.* at 9.22(c); and (3) substantial experience in the practice of law, *id.* at 9.22(i). The hearing board found that the following mitigating factors were present: (1) the absence of prior discipline in over thirty years of practice, *id.* at 9.32(a); (2) a timely good faith effort to make restitution, *id.* at 9.22(d); (3) good character and reputation in the legal community, *id.* at 9.32(g); and (4) the existence of remorse, *id.* at 9.32(*l*).

Given the duration of the arrangement between the respondent and Silver & Hayes, the magnitude of the payments made to him under the agreement, and the concomitant deception of Title U.S.A., we conclude that any sanction less than a public censure would be too lenient. Two members of the court would impose a more severe sanction. *See People v. Gaimara,* 810 P.2d 1076, 1080 (Colo.1991) (rejecting grievance committee's recommendation of thirty-day suspension as too lenient and concluding that attorney's intentional misconduct and deception warranted six month suspension even though attorney had no prior disciplinary record).

## III

Accordingly, we publicly censure the respondent John C. Mulvihill. Arrangements such as Mulvihill had with Silver & Hayes have the ability to inflict great harm on a client, as well as the participants to the agreement. The potential conflict here is so obvious that it is impossible to believe that any attorney would not recognize it. Had actual harm to Title U.S.A. been demonstrated, more severe discipline would have been imposed. We publicly reprimand Mulvihill and order him to pay the costs of these proceedings in the amount of $506.80 within thirty days after the date of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.