**The PEOPLE of The State of Colorado, Complainant,**

v.

**John D. LaSALLE, Attorney–Respondent.**

**No. 92SA364.**

Supreme Court of Colorado, En Banc.

Feb. 16, 1993.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

John D. LaSalle, pro se.

PER CURIAM.

The respondent in this attorney disciplinary proceeding neglected a legal matter entrusted to him, and misrepresented to his client that he would take action but did not. A hearing panel of the Supreme Court Grievance Committee approved the hearing board's findings and recommendation that the respondent be suspended for thirty days and be assessed costs. Both parties have excepted to the hearing panel's action. While the assistant disciplinary counsel contends that the recommended sanction is too lenient, the respondent asserts that the sanction is too harsh. We accept the hearing panel's recommendation.

I

The respondent was admitted to the bar of this court on October 11, 1973, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). Based upon the testimony of the complaining witness and the respondent's witnesses, including the respondent himself, and considering the exhibits introduced into evidence, the hearing board concluded that the following facts had been established by clear and convincing evidence.

In mid-October 1982, Michael J. Kelly was discharged as town marshal by the town manager of Snowmass Village, and the discharge was upheld by the town council. Kelly, who is the complaining witness in this proceeding, initially hired Ashley Anderson to represent him in an action to recover unpaid benefits allegedly due Kelly under a contract. Anderson filed suit against the Town of Snowmass Village

on September 4, 1985. In late 1987, Anderson left the state.[1] Before leaving, Anderson persuaded the respondent to become the custodian of Anderson's clients' files, but the respondent did not agree to assume responsibility for the cases themselves. The respondent was introduced to Kelly over the telephone, but at that time made no commitment to take over Kelly's case.

On June 17, 1988, the district court issued a notice that Kelly's case would be dismissed for lack of prosecution unless cause was shown why the case should not be dismissed. Kelly was unable to contact the respondent by telephone, and he responded *pro se* to the notice of dismissal. Kelly's request for a continuance to locate and employ counsel was granted by the district court. Kelly was given until September 12, 1988, to hire new counsel and to show cause why the action should not be dismissed. After attempts to talk to the respondent on the telephone were unsuccessful, Kelly went to the respondent's office on September 12, 1988, and told him that the response to the show cause order had to be filed that day. The respondent agreed to represent Kelly and he filed an entry of appearance and response to the show cause order late on September 12.

The district judge dismissed Kelly's action without prejudice on September 13, 1988, without reviewing the respondent's response. When the respondent's entry of appearance and response to the show cause order was called to his attention, the district judge directed that the order of dismissal be sent to the respondent. The order was sent to the respondent on September 19, 1988. After receiving the order of dismissal, the respondent assured Kelly that he would immediately file a motion for reconsideration to have the matter reopened. Nevertheless, despite calls and correspondence from Kelly, the respondent never filed a motion with the court, nor did he institute a new action.

Kelly went to the respondent's office on June 20, 1990. The respondent admitted that he had not filed the motion for reconsideration. He said he would do so, however, and began dictating such a motion in Kelly's presence. The respondent did not file the motion. Two months later, Kelly sent the respondent a note asking about the status of the motion, and enclosed a blank check for the respondent to fill out for legal services. The respondent placed Kelly's letter, unopened, in the case file and did not respond to it.

Kelly ran into the respondent in December 1990, and asked about the progress of the case. The hearing board found that Kelly misinterpreted the respondent's remarks to mean that the respondent had filed the motion for reconsideration. Later that month, Kelly went to the court to look at the file. After the file was retrieved from storage, Kelly discovered that the respondent had not done anything in the case since entering his appearance in September 1988. The respondent failed to file any motion for reconsideration, and allowed the statute of limitations to lapse on Kelly's claim.

As the hearing board concluded, the respondent's inaction over a period of more than two years violated DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer). Moreover, the respondent's repeated assurances that he would file a motion for reconsideration, coupled with the respondent's failure to do so, violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## II

The hearing panel approved the board's recommendation that the respondent be suspended from the practice of law for thirty days. In the absence of significant aggravating or mitigating factors, the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp. 1992) (ABA *Standards* ), prescribe a period

---

1. On October 7, 1991, Anderson was suspended for three years for professional misconduct, which included leaving his practice without properly withdrawing from pending cases or filing a change of address. *People v. Anderson,* 817 P.2d 1035 (Colo.1991).

of suspension for misconduct such as the respondent's. Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

ABA *Standards* 4.42. Suspension is also appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to the client. *Id.* at 4.62.

In aggravation, the hearing board found (1) the existence of a prior letter of admonition "for essentially the same type of misconduct alleged in the instant case," ABA *Standards* 9.22(a)[2]; (2) a pattern of misconduct, *id.* at 9.22(c); and (3) that the respondent has substantial experience in the practice of law, *id.* at 9.22(i). The board also found the existence of a number of mitigating factors: (1) the absence of a selfish motive, *id.* at 9.32(b); (2) the respondent displayed a fully cooperative attitude during the proceedings, *id.* at 9.32(e); (3) the respondent has a strong reputation for truth and veracity and, for the nineteen years that he has been an attorney in Aspen, has had a good reputation as a lawyer, *id.* at 9.32(g); and (4) the respondent impressed the board with his sincere remorse, *id.* at 9.32(*l*).

The assistant disciplinary counsel contends that a thirty-day suspension is too lenient and that our decisions in *People v. Gaimara*, 810 P.2d 1076 (Colo.1991) and *People v. Barber*, 799 P.2d 936 (Colo.1990), mandate a three to six-month suspension. We find *Gaimara* and *Barber* distinguishable.

The attorney in *Gaimara* was suspended for six months. In addition to neglecting a legal matter, the attorney made repeated misrepresentations and submitted false documents to the disciplinary investigator which "posed a real danger of a miscarriage of justice had the misrepresentations not been detected." 810 P.2d at 1079. In *Barber*, the attorney neglected a legal matter resulting in the running of the statute of limitations on his clients' claims. The attorney in *Barber*, who was also suspended for six months, had an extensive history of prior discipline for neglect, and refused to acknowledge the wrongful nature of his conduct even in the briefs he filed in this court. 799 P.2d at 939–41.

Considering the factors in mitigation, we agree that a short period of suspension is warranted in this case. *See People v. Masson*, 782 P.2d 335 (Colo.1989) (attorney suspended for thirty days for neglecting a legal matter resulting in grant of summary judgment and attorney's fees and costs against client and where attorney had previously received letter of admonition for neglect). We accept the recommendation of the hearing panel.

### III

It is hereby ordered that John D. LaSalle be suspended from the practice of law for thirty days, effective thirty days after the issuance of this opinion. C.R.C.P. 241.-21(a). It is further ordered that LaSalle pay the costs of these proceedings in the amount of $567.54 within 30 days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80203.

**2.** The respondent argues that the letter of admonition was for misconduct dissimilar from the misconduct in this case and that the hearing board placed undue weight on the prior discipline. While the earlier misconduct may have some distinguishing characteristics, the prior discipline was relevant. The fact that the respondent's client was not the complaining witness in the previous disciplinary matter is not particularly significant. *See* ABA *Standards* 9.4(f) (the failure of the attorney's client to complain is neither an aggravating nor a mitigating factor). We conclude that the board considered the letter of admonition appropriately when deliberating on the range of sanctions.