**The PEOPLE of the State of Colorado, Complainant,**

v.

**Thomas Joseph KERWIN, Sr., Attorney–Respondent.**

**No. 93SA202.**

Supreme Court of Colorado, En Banc.

Oct. 18, 1993.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Phillip S. Figa, Englewood, for attorney-respondent.

## PER CURIAM.

In this attorney disciplinary proceeding, the respondent[1] and the assistant disciplinary counsel have entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. In the stipulation, the respondent consented to the imposition of a suspension from the practice of law ranging from sixty days to one year and one day. The assistant disciplinary counsel recommended a period of suspension between six months and one year. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation and recommended that the respondent be suspended for six months and be as-

sessed the costs of the proceeding. The respondent has asked the court to reject the inquiry panel's recommendation and impose a sixty-day suspension and the assistant disciplinary counsel now urges the court to accept the panel's recommendation of six months. We accept the stipulation and the recommendation of the inquiry panel.

I

The stipulation covers six counts of professional misconduct contained in two formal complaints. In the first count, the respondent represented James and Lois Land in a civil action in Costilla County District Court. The action was filed in April 1986 and was entitled *Land v. Crow*, No. 86–CV–8. The Lands alleged that the Crows conspired with First National Bank in Alamosa, and with an officer and attorney of the bank, to defraud the Lands of a note receivable that they had pledged to the bank as security. On February 22, 1988, the bank served its first set of interrogatories and request for the production of documents upon the respondent. Pending the disposition of a motion to disqualify the respondent, the discovery was stayed, twice, but the respondent failed to provide the discovery after the expiration of the last stay. The defendants continued to seek discovery from the respondent and his clients, while at the same time the respondent also sought discovery. On December 1, 1988, the bank filed a motion to compel, which the respondent subsequently confessed, and the court ordered responses to the requests for discovery by December 27, 1988.

When the respondent still failed to provide the required responses, the bank moved on January 13, 1989 for sanctions, including dismissal of the Lands' complaint. On March 8, 1989, the district judge found that the respondent's disregard of discovery obligations was willful, in bad faith, and without justification, and ultimately ordered that the Lands' claims against all of

---

1. The respondent was admitted to the bar of this court on September 7, 1954, is registered as an attorney upon this court's official records, #04168, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

the defendants be dismissed with prejudice. Judgment was also entered against the respondent and the Lands for costs and attorney's fees.

During this time period, the respondent suffered from various health problems, and had difficulty obtaining discovery responses from his clients. On April 19, 1989, the district judge denied the respondent's motion to reconsider, however, noting that the respondent's health problems were an insufficient excuse in light of the extremely busy schedule that the respondent maintained during the time in question. One of the defendants had to file a writ of garnishment on the respondent's bank account in order to collect the judgment for attorney's fees.

The respondent initially filed a notice of appeal on June 6, 1989, and the bank moved to dismiss the appeal on a number of grounds, including the fact that a bank counterclaim was still pending in the district court. At the Lands' request, the respondent also moved to dismiss the appeal. The court of appeals dismissed the appeal without prejudice on August 21, 1989. On January 4, 1990, the district court dismissed the counterclaim and the respondent filed a second notice of appeal. The court of appeals ordered the respondent to show cause why the appeal should not be dismissed for failure to attach the district court's order. The second attempted appeal was later dismissed without prejudice on the respondent's motion.

The respondent then tried to relitigate the issues of sanctions and attorney's fees in the district court, but the district judge concluded that the respondent's motions were untimely under C.R.C.P. 59 and were frivolous. The respondent's third attempt to appeal was dismissed with prejudice as untimely.

The respondent has admitted that his conduct violated DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); DR 6–101(A)(2) (a lawyer shall not handle a legal matter en-trusted to the lawyer without adequate preparation under the circumstances); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); and DR 7–106(C)(7) (in appearing in the lawyer's professional capacity before a tribunal, a lawyer shall not intentionally or habitually violate any established rule of procedure or evidence). The respondent and the assistant disciplinary counsel have stipulated, however, that any harm suffered by the Lands because of the dismissal is speculative, and that the Lands themselves believe that they share the responsibility for the dismissal of their complaint.

II

The second count also involves the respondent's professional relationship with the Lands. On October 22, 1985, the Lands filed a *pro se* Chapter 11 petition in the bankruptcy court, District of Colorado, and the respondent later entered his appearance on their behalf. The two attorneys that represented First National Bank and its officer in *Land v. Crow* also represented the bank in the bankruptcy proceeding, and in April 1986, the bank obtained relief from a stay covering its security interests in certain real property. Although the delay was not caused by the respondent, no reorganization plan or disclosure statement was filed over the next year and a half. In September 1987, the bank moved to dismiss the bankruptcy proceeding. At a hearing on the bank's motion, the respondent asked that the hearing be continued, and that he be allowed to withdraw, because of the pendency of a motion to disqualify him in *Land v. Crow*. The bankruptcy judge continued the matter for three weeks and ultimately permitted the respondent to withdraw.

The bankruptcy judge also issued an order requiring the respondent to comply with various provisions of the Bankruptcy Code and Rules. After finding that the respondent had not complied with the Code and Rules, the bankruptcy judge entered judgment for $1,175 against the respon-

dent, personally, and which the respondent paid.

As ordered, the respondent applied for attorney's fees from the bankruptcy estate. The bankruptcy judge subsequently concluded that the respondent had not complied with several provisions of the Bankruptcy Code and Rules, however, and ordered him to return $3,484 in attorney's fees he had been paid for the bankruptcy, and to refund over $30,000 in fees paid by the brother of one of his clients for the respondent's services in *Land v. Crow.* When the respondent failed to timely certify his return of the fees, a contempt citation was issued. Although the bankruptcy judge determined that the respondent had not complied with the refund order, the respondent was not found in contempt. The respondent deposited the fees accepted from his client's brother with the district court clerk, and after the bankruptcy court's order was affirmed by the district court and an appeal to the Tenth Circuit Court of Appeals was unsuccessful, the clerk returned the fees to the brother.

As the respondent has stipulated, his conduct violated DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(2), DR 6–101(A)(3), and DR 7–106(C)(7).

### III

The third count of misconduct also involves the Lands. On September 26, 1988, the First National Bank filed an unlawful detention action in Conejos County to evict the Lands after foreclosing on their home and farm. The respondent filed an answer and counterclaim on October 17, 1988, but the counterclaim was struck because *Land v. Crow* was pending. On March 22, 1989, the court granted the bank's motion for summary judgment. The court later awarded nearly $3,000 in attorney's fees against the respondent personally, and $8,000 against the Lands, under section 13–17–102, 6A C.R.S. (1987). The court found that attorney's fees were greatly increased by the respondent's litigious conduct, by his attempts to relitigate issues and to litigate issues from *Land v. Crow* in the unlawful detainer action, by the respon-

dent's filing of repetitious pleadings, and by his tactic of having the Lands file certain motions and pleadings *pro se.* The respondent has paid the amount apportioned against him, and his clients continue to pay the assessment against them.

The respondent then appealed, and the bank moved to dismiss the appeal. After first dismissing the appeal for failure to comply with the applicable appellate rules, the court of appeals reinstated the appeal. With the Lands' consent, however, the respondent moved to dismiss the appeal. On January 31, 1990, the court of appeals dismissed the appeal and awarded the bank $75.00 in costs. The respondent has admitted that his conduct violated DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(2) (in representing a client, a lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law), and DR 7–106(C)(7).

### IV

In Count IV, the respondent represented a different plaintiff against the same bank in *Rex v. First National Bank in Alamosa,* No. 86–B–704, filed in the United States District Court for the District of Colorado. The complaint alleged that an employee of the defendant honored a single-party withdrawal of $340,000 when the signature card required two signatures. On September 5, 1986, the district judge entered an order holding the case in abeyance pending a reasonable time for the winding up of certain partnership affairs. The judge also established a six-month timetable for the filing of an amended complaint addressing the winding up, or for a status report.

The respondent filed three status reports, two of which requested permission to conduct discovery. Both requests were denied. In November 1988, the case was assigned to a different federal district judge. Shortly thereafter, at the request of his client, the respondent filed a motion to compel discovery and to compel the bank to answer the complaint. The district judge denied the motion, and ruled that it had been interposed in bad faith and was

not warranted by existing law. On its own motion, the district court fined the respondent and his client $250, which amount was paid and no appeal was taken.

The respondent stipulated that the foregoing conduct violated DR 1–102(A)(5), DR 1–102(A)(6), and DR 7–106(C)(7).

## V

In *Kerwin v. Arthur Young & Co.*, No. 86–CV–291, filed in Douglas County District Court, the respondent, acting *pro se*, sued an accounting firm, alleging malpractice and breach of fiduciary duty. While the respondent filed the complaint on June 30, 1986, he did not serve or otherwise notify the defendant. The case was initially dismissed for failure to prosecute, but the court granted the respondent's motion to reconsider the dismissal. On March 23, 1987, the respondent filed an amended complaint, but once again he did not serve or otherwise notify the defendant.

On June 15, 1989, the case was once more dismissed for failure to prosecute, the district judge finding that the respondent had taken no significant action in the case for three years. The respondent then served the summons and complaint along with a motion to reconsider the dismissal. In denying the motion to reconsider, the court imposed a $500 sanction on the respondent under C.R.C.P. 11, because the motion was frivolous and demonstrated a lack of diligence. The respondent's conduct violated DR 1–102(A)(5), DR 1–102(A)(6), DR 7–102(A)(2), and DR 7–106(C)(7).

## VI

On May 12, 1990, William E. Price retained and paid the respondent $5,000 to represent him in a family dispute. The respondent deposited Price's retainer check into his business account rather than into his law firm's trust accounts. Price discharged the respondent in January 1991 and asked for an accounting of services performed and a refund of the unearned portion of the retainer. The respondent wrote Price that he had received Price's letter, that he would review the billing file, and would respond promptly. The respondent failed to do so, however, even after he had been contacted by Price's accountant and by his attorney.

On August 22, 1991, Price filed a request for investigation with the Office of Disciplinary Counsel. The respondent wrote to Price's attorney on September 3, 1991, enclosing a refund check for $3,285 and a statement claiming that ten hours of work had been performed at the rate of $160 per hour, plus costs.

Although a substantial portion of the retainer represented unearned attorney's fees, the respondent deposited the retainer into his business account rather than trust account. He also failed to promptly refund the unearned fees and failed to render an accounting for eight months after he was discharged. The respondent admits that his conduct violated DR 2–110(A)(3) (a lawyer who withdraws from employment shall refund promptly any unearned attorney's fees); DR 9–102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located); DR 9–102(B)(3) (a lawyer shall maintain complete records of client property in the possession of the lawyer and render appropriate accounts to the client regarding the property); and DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive). The assistant disciplinary counsel has stipulated that it could not be established by clear and convincing evidence that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. *See* DR 1–102(A)(4).

## VII

Both of the parties to the stipulation agree that a period of suspension is an appropriate sanction for the misconduct here, and the inquiry panel recommends imposition of a six-month suspension. The assistant disciplinary counsel requests that

we accept the inquiry panel's recommendation, while the respondent asserts that a sixty-day suspension is adequate.

As the assistant disciplinary counsel notes, an appropriate sanction for the misconduct described in Counts I through V is somewhat difficult to assess. The gravamen of the misconduct described in these first five counts, however, is the respondent's habitual disregard of established rules of procedure, rather than the outright neglect of his clients' causes. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*), in the absence of aggravating or mitigating factors, "[s]uspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." ABA *Standards* 6.22. Given the extent and the scope of the misconduct, a long rather than short period of suspension would ordinarily be warranted.

The assistant disciplinary counsel characterizes the respondent's conduct in Count VI, in failing to account for and return unearned attorney's fees, as "careless" or negligent, rather than intentional. In the absence of aggravation or mitigation, a public censure "is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." *Id.* at 4.13; *see People v. Sadler*, 831 P.2d 887 (Colo.1992) (lawyer publicly censured for failing to handle client matters in a timely fashion and to promptly refund client funds).

In aggravation, the respondent has a prior disciplinary history. ABA *Standards* 9.22(a). He received an admonition in 1982, and a private censure and an admonition in 1986. The assistant disciplinary counsel points out, however, that the misconduct involved in Counts I to V appears to be "an aberration in an otherwise excellent legal career" of almost forty years of practice. Additional factors in aggravation include a pattern of misconduct, *id.* at 9.22(c); the presence of multiple offenses, *id.* at 9.22(d);

and the respondent's substantial experience in the practice of law, *id.* at 9.22(i).

The assistant disciplinary counsel has also suggested that the case presents "compelling mitigation." The Lands were the respondent's clients in Counts I through III, and the respondent appeared *pro se* in Count V. The fact that the Lands have not complained of the respondent's conduct is, in itself, neither an aggravating nor a mitigating factor. *People v. LaSalle*, 848 P.2d 348, 350 n. 2 (Colo.1993); ABA *Standards* 9.4(f). There is no question that the respondent's misconduct injured, or had the potential to injure, other parties to the proceedings, and that the conduct interfered with the legal proceedings. On the other hand, the absence of injury to the Lands is relevant. The sanctions imposed upon and paid by the respondent in the various proceedings constituted partial mitigation for the damage he caused to the other parties and to the legal system. *See* ABA *Standards* 9.32(d) (timely good faith effort to make restitution or rectify the consequences of misconduct is mitigating factor); *id.* at 9.32(k) (imposition of other penalties or sanctions is a mitigating factor). In addition, it is undisputed that the respondent experienced serious health problems during the relevant time period. *See* ABA *Standards* 9.32(c). Other circumstances tending to mitigate the misconduct are the absence of a dishonest or selfish motive, *id.* at 9.32(b); and the respondent's full and free disclosure and cooperative attitude during the disciplinary proceedings, *id.* at 9.32(e). The respondent has also made a voluntary commitment to perform 100 hours of community services without compensation during the period of suspension.

Although the misconduct is serious, the factors in mitigation are significant. We conclude that the inquiry panel's recommendation of a six-month suspension, while on the lenient side and the absolute minimum acceptable sanction, is reasonable under these circumstances. Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct.

## VIII

It is hereby ordered that Thomas Joseph Kerwin, Sr., be suspended from the practice of law for six months, commencing thirty days from the date of this opinion. It is further ordered that Kerwin pay the costs of this proceeding in the amount of $448.16 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.