**The PEOPLE of the State of Colorado, Complainant,**

v.

**Donald Keith SMITH, Respondent.**

**No. 05PDJ072.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

May 18, 2006.

Attorney Regulation. Following a hearing pursuant to C.R.C.P. 251.18, a Hearing Board suspended Respondent Donald Keith Smith (Attorney Registration No. 02542) from the practice of law for a period of one year and one day, effective June 19, 2006. The Hearing Board found by clear and convincing evidence that Respondent knowingly violated duties owed to two of his clients and the legal profession when he failed to diligently pursue their interests and failed to effectively communicate with them. The Hearing Board also found by clear and convincing evidence that Respondent maintained a "careless and slipshod" billing system and failed to advise his clients in writing of the basis of his fee within a reasonable time after the commencement of the representation. Finally, the Hearing Board found that Respondent charged one of his clients an unreasonable fee in return for very little work, and in turn ordered him to pay restitution to this

former client. Respondent's misconduct constituted grounds for the imposition of discipline pursuant to C.R.C.P. 251.5 and violated Colo. RPC 1.3, 1.4(a) & (b), 1.5(a) & (b), and 8.4(c).

On March 6–7, 2006, a Hearing Board composed of LAIRD T. MILBURN, BRUCE W. SATTLER, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a hearing pursuant to C.R.C.P. 251.18. James S. Sudler appeared on behalf of the Office of Attorney Regulation Counsel ("the People") and Donald Keith Smith ("Respondent") appeared pro se. The Hearing Board issues the following Opinion and Order Imposing Sanctions.

## OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED:* **SUSPENSION FOR ONE YEAR AND ONE DAY**

### I. *ISSUE*

Suspension is generally appropriate when a lawyer knowingly fails to perform client services or knowingly deceives a client and causes injury. Respondent failed to advise two clients in writing of the basis of his fee charged for services, collected fees, and then failed to perform meaningful services or communicate with his clients regarding the limited work he performed. Is suspension appropriate under these circumstances?

### II. *PROCEDURAL HISTORY AND BACKGROUND*

On October 13, 2005, the People filed a complaint pursuant to C.R.C.P. 251.14 in this matter. Respondent filed his answer on November 8, 2005. On January 3, 2006, the People filed a Motion for Judgment on the Pleadings as to Claims 1 and 7 of their complaint. Respondent failed to file a response to this motion, and the PDJ denied the People's motion as it related to Claim 1 and granted the motion as it related to Claim 7.

The Hearing Board heard evidence regarding the substantive allegations set forth in the complaint. The Hearing Board also heard arguments on the appropriate sanction for the potential rule violations, including evidence of aggravating and mitigating factors. The People recommended a suspension. Respondent presented testimony, including his own, but made no specific recommendation on sanctions.

### III. *FINDINGS OF MATERIAL FACT*

The Hearing Board considered the pleadings, the testimony of each witness, and all exhibits admitted into evidence and now makes the following findings of fact by clear and convincing evidence.

Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on September 20, 1962. He is registered upon the official records of the Colorado Supreme Court, Attorney Registration Number 02542. Respondent is therefore subject to the jurisdiction of this court in these disciplinary proceedings pursuant to C.R.C.P. 251.1(b).

#### The Bates Matters

*The Divorce Case*

Respondent agreed to represent Pauline Bates in two cases. The first case involved Ms. Bates' divorce and the second case involved a challenge to a codicil to a will that named Ms. Bates as a beneficiary of an estate.

Ms. Bates originally attempted to handle the divorce on her own, but decided to hire Respondent after her husband hired an attorney. By the time Ms. Bates hired Respondent, she and her former husband had already signed a separation agreement. Ms. Bates paid Respondent a $500.00 retainer in early February 2002. Respondent had never represented Ms. Bates before February 2002, and admittedly did not enter into a written fee agreement or advise Ms. Bates in writing of the basis of his fee within a reasonable time of the commencement of the representation.

Ms. Bates' divorce became final in December 2002, but the property settlement continued into 2004. The court entered final orders at a hearing on March 8, 2004. During

the hearing, Respondent and Ms. Bates exchanged words. Respondent told Ms. Bates that she needed to confirm the documents in his possession were her medical records. Ms. Bates asked Respondent if she could retrieve her eyeglasses because she could not see the documents without them. Respondent told her to "just sign the papers" and she did. Later, she discovered the documents Respondent concerned her husband's prostate operation, not her medical records.

Because Ms. Bates felt Respondent did not seem to be moving the property settlement with her ex-husband forward, and he did not seem to know what documents he asked her to affirm, she fired Respondent and hired another lawyer to represent her in the divorce property settlement.

It is unclear from the evidence presented whether Respondent earned the $500.00 in fees he charged Ms. Bates to represent her in the divorce. Furthermore, Respondent insisted that Ms. Bates wanted to continue the divorce settlement pending her anticipated settlement of a probate matter, but admitted that the probate matter would not have had a bearing on the property settlement in the divorce case.

*The Probate Case*

In August 2002, Ms. Bates hired Respondent to represent her in a probate matter in Douglas County and paid him a $2,000.00 retainer. Respondent again did not enter into a written fee agreement or advise Ms. Bates in writing of the basis of his fee within a reasonable time of the commencement of the representation.

Melvyn Brown, whom Ms. Bates had cared for before he died, created a codicil to his will, which named Ms. Bates as a beneficiary. The codicil stated that Ms. Bates would receive his house and that Larry Brown, Melvyn Brown's son, would receive everything else. When Melvyn Brown died in May 2002, and after the probate matter commenced in July 2002, Larry Brown challenged the validity of the codicil. Aaron Barrick represented Larry Brown, the personal representative of his father's estate.

Mr. Barrick contacted Ms. Bates by letter and she forwarded it to Respondent who then sent Mr. Barrick a letter of representation on August 14, 2002.[1] Mr. Barrick sent Respondent a letter in response and encouraged him to submit a list of property in order to negotiate a resolution of the dispute, but Respondent became non-responsive to further attempts to communicate about the case. During this time, Respondent also failed to meaningfully respond to inquiries from Ms. Bates about the status of the case. She would call and he would say everything is "ok." Respondent never sent her a letter or told her what he would do to assure she would obtain the house as provided in the codicil.

Mr. Barrick filed a Petition for Final Distribution and alleged undue influence and lack of testamentary capacity with regard to the will codicil. Respondent filed an Objection to the Final Distribution in order to assert Ms. Bates' interest, but not until May 2003. It is unclear why it took so long for Respondent to file the objection.

Ms. Bates fired Respondent in May 2004 and retained Curt Penny to represent her in the probate matter. She paid Mr. Penny $9,000.00 and he thereafter negotiated the matter with Mr. Barrick and settled it for $47,000.00 at mediation.

After Ms. Bates fired Respondent in the spring of 2004, he sent her a bill[2] dated May 17, 2004 for both matters in the amount of $11,851.25. This is the only bill Respondent sent to Ms. Bates in the course of his representation in both matters. Ms. Bates stated that she never knew if Respondent did the tasks itemized on his bill, which covered Respondent's representation from April 2002 through March 2004. Respondent stated he never paid attention to the bills sent from his office and that he had no actual knowledge of any previous bills, but testified that he orally advised Ms. Bates of the rate of attorney fees he charged clients.

---

1. *See* Complainant's Exhibit 10.

2. *See* Complainant's Exhibit 1.

### The Deland Matter

Lesa Deland is the daughter of Pauline Bates. Lesa Deland and her husband Larry Deland constructed a house near Buena Vista, Colorado. Upon completion of construction, the Delands needed a permanent loan to pay off their construction loan. They arranged for a thirty-year mortgage through a mortgage broker in Colorado Springs.

However, the Delands experienced problems with the permanent financing of their new house. The mortgage payment on their new home turned out to be $1,300.00 instead of the original amount they believed it would be of $861.00. In addition, Mrs. Deland felt that the documentation incorrectly showed her ownership interest in the land on which the house was built, while her husband had an ownership in the house itself.

Although the Delands did not want to sign the closing documents, they claimed they were compelled to do so. Each of these events took place before the Delands hired Respondent. After they closed on the house, the Delands met with Respondent on the day after Christmas 2001 to see what he could do to help them keep their home and reduce the monthly payment. Ms. Deland sent Respondent a retainer fee check for $3,000.00 after she returned to Buena Vista and eventually paid him a total of $9,000.00.

Respondent failed to enter into a written fee agreement or advise the Delands in writing of the basis of his fee within a reasonable time of the commencement of the representation. Respondent had not represented the Delands before December 2001. Respondent stated that he orally advised the Delands of his fee. The Delands never received a bill from Respondent in the course of his representation.[3]

Respondent advised the Delands not to pay their mortgage, because he believed they had "squatters rights." He also advised the Delands that he would have a banker friend review their mortgage documents. When Mrs. Deland contacted Respondent, he would tell her that everything was going "ok" with

her case and that she should not worry because they were living in the house without having to pay monthly mortgage payments they could not afford in any event. The mortgage lender eventually began an action in Chaffee County to foreclose on the loan because of non-payment.

Other than a motion to join a party to the lawsuit and an answer on behalf of the Delands in March 2004, Respondent did not provide the Delands with any documentation that showed work performed on their behalf. He did not file disclosures or conduct discovery. Respondent withdrew from representing the Delands in September 2004. Respondent claims he completed research in the Deland's case, including research about truth in lending laws, and produced at trial a billing statement indicating the Delands still owed him $961.25.

The Delands eventually hired Dale Enck to represent them and he settled the matter. The settlement required the Delands to give a deed in lieu of foreclosure. The Delands lost their house, uprooted their children, and suffered from stress as a result of these events. In addition, the Delands had to pay Mr. Enck $1,800.00 for his services.

## IV. CONCLUSIONS OF LAW— SUBSTANTIVE ALLEGATIONS

### The Bates Matters

The Hearing Board finds by clear and convincing evidence:

1. Respondent violated Colo. RPC 1.5(b) when he failed to advise Ms. Bates in writing of the basis of his fee within a reasonable time after the commencement of the representation. Respondent had not regularly represented Ms. Bates in the past and he did not send her a bill from November 2002 until she fired him in May 2004.

2. Respondent violated Colo. RPC 1.4(a) when he failed to keep Ms. Bates reasonably informed about the status of her case or promptly comply with reasonable requests for information. He

---

3. Respondent offered Exhibit A at the hearing, which purports to be a bill for the Deland matter. Respondent never produced this document be-

fore the hearing despite repeated requests from the People.

also failed to keep her reasonably informed about fees he claimed he earned.

3. Respondent violated Colo. RPC 1.3 when he failed to diligently handle the probate matter for Ms. Bates. Respondent failed to actively assert her interests in the probate matter.

4. Respondent violated Colo. RPC 1.4(a) when he failed to adequately communicate with Ms. Bates in the probate matter. Respondent failed to inform Ms. Bates of the pleadings he filed or the status of her case. He should have advised her so that she could decide various issues and protect her interests in the divorce and the codicil matters. Respondent also failed to keep Ms. Bates informed on a periodic basis of the fees he charged her.

### The Deland Matter

The Hearing Board finds by clear and convincing evidence:

1. Respondent violated Colo. RPC 8.4(c) and acted dishonestly when he performed little or no work and kept the $9,000.00 the Delands paid him. In addition, Respondent never provided an accounting or bill to show he earned the money.

2. Respondent violated Colo. RPC 1.5(a) when he charged the Delands and unreasonable fee ($9,000.00) and completed very little work. Respondent claims he performed considerable research for the Delands, but he cannot produce any records to verify his claim. The only tangible evidence produced of the work he performed is a motion and an answer.

3. The PDJ already found Respondent violated Colo. RPC 1.5(b) when he failed to advise Ms. Deland or her husband in writing of the basis of his fee within a reasonable time after the commencement of the representation.[4]

4. Respondent violated Colo. RPC 1.4(a) and (b) when he failed to adequately communicate with the Delands about

his strategy or the potential consequences of such a strategy. Respondent also failed to respond to reasonable requests for information from the Delands and did not adequately communicate about the substance of the cases with his clients.

5. Respondent violated Colo. RPC 1.3 when he failed to diligently handle the real estate matter for the Delands. There is no evidence that Respondent did any work from August 2003 through September 2004. The only tangible evidence produced of the work he performed is a motion and an answer. He should have completed disclosures, negotiations, discovery or some other action for the Delands.

### V. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. The appropriate sanction depends upon the facts and circumstances of each case. The Hearing Board considered the testimony of each witness and exhibit admitted into evidence.

### Analysis Under the ABA *Standards*

Suspension is generally appropriate when a lawyer knowingly fails to perform services for a client, or knowingly deceives a client and causes injury or potential injury to a client. ABA *Standards* 4.42 and 4.62. Therefore, suspension is the *presumptive* sanction in this case based on Respondent's misconduct. However, in imposing a sanction after a finding of lawyer misconduct, ABA *Standard* 3.0 directs the Hearing Board to first consider the following factors:

(1) The duty violated;

(2) The lawyer's mental state;

(3) The actual or potential injury caused by the misconduct; and

(4) The existence of aggravating or mitigating factors.

4. *See* Order Re: Motion for Judgment on the Pleadings dated February 9, 2006.

## A. THE DUTY VIOLATED

Respondent violated duties to his clients and the legal profession when he failed to diligently pursue the interests of his clients and effectively communicate with them. Respondent also violated his duty to the legal profession when he failed to deal with opposing counsel and handle matters in a manner that would not delay proceedings. "Attorney misconduct perpetuates the public's misperception of the legal profession and breaches the public and professional trust." *In re DeRose*, 55 P.3d 126, 131 (Colo.2002) (paraphrasing *In re Pautler*, 47 P.3d 1175, 1178 (Colo.2002)).

## B. THE LAWYER'S MENTAL STATE

" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA *Standards*, Definitions. Here, Respondent acted with awareness when he failed to perform meaningful services for the Delands and Mrs. Bates. Respondent also acted with awareness when he dishonestly led the Delands to believe all was well with their case involving the mortgage on their house.

With reference to the Colo. RPC 8.4(c) violation, the People chose not to charge Respondent with conversion; instead they charged that Respondent acted dishonestly when he failed to provide $9,000.00 in services to them. Respondent acted knowingly when he charged $9,000.00 for his services. In addition, the Hearing Board finds that Respondent maintained a careless and slipshod billing system. In some instances, billing entries did not indicate what work had been accomplished, and in others there was no indication of the amount of time it took to complete a particular task.

The Hearing Board had concerns about Respondent's cognitive functioning after listening to his explanation of billing issues and his assessment of what work he claimed on behalf of clients. Nevertheless, the Hearing Board finds Respondent was aware of his conduct throughout the matters charged in the complaint and was able to competently represent himself in these proceedings.

## C. THE ACTUAL OR POTENTIAL INJURY

Respondent's misconduct caused delay in the court proceedings for both Mrs. Bates and the Delands. In the Delands case, they lost an opportunity to keep their new house, and they suffered the stress of losing their house. The Delands also spent $1,800.00 on subsequent counsel they otherwise should not have needed.

## D. AGGRAVATING AND MITIGATING FACTORS

### 1. MATTERS IN AGGRAVATION, ABA *STANDARD* 9.2

The Hearing Board considered evidence of the following aggravating circumstances in deciding the appropriate sanction to impose. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline imposed. ABA *Standard* 9.21.

**Prior Disciplinary Offenses—9.22(a)**

Respondent's prior discipline includes: a private admonition from 1981 for engaging in conduct prejudicial to administration of justice (presently a Colo. RPC 8.4(d) violation); a public censure from 1991 for neglecting a client (presently a Colo. RPC 1.3 violation); a public censure from 1994 for a conflict of interest matter (presently a Colo. RPC 1.8 violation); and an ongoing probation (with a stayed suspension) case from 2004. Although these cases, except for the most recent in 2004, occurred over ten years ago, there is a theme of lack of diligence and neglect throughout Respondent's disciplinary history. Given the length of time that has passed for most of these violations, however, the Hearing Board gives them less weight than the most recent violations.

**Dishonest or Selfish Motive—9.22(b)**

The Hearing Board finds Respondent deprived the Delands of $9,000.00 when

he took the money and failed to provide services of an equivalent value. Though Respondent claims that he completed substantial work on behalf of the Delands, his records do not support this claim. Respondent filed an answer to the mortgage lender's action in foreclosure and filed a motion to join a party. Respondent also consulted with a former banker on the closing documents the Deland's signed and told them not to pay their mortgage. Beyond this, he did little else that was meaningful to represent these clients. Such behavior demonstrates dishonesty and a selfish motive.

**Substantial Experience in the Practice of Law—9.22(i)**

Respondent has nearly 44 years of experience as a lawyer and is (or should be) well aware of his ethical responsibilities. The extent of his experience makes Respondent's breach of his responsibilities and duties even more egregious.

## 2. MATTERS IN MITIGATION, ABA STANDARD 9.3

The Hearing Board considered evidence of the following mitigating circumstances in deciding what sanction to impose. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. ABA *Standard* 9.31.

**Personal or Emotional Problems—9.32(c)**

The Hearing Board considered Respondent's testimony related to his recent financial problems and health issues related to his foot.

**Remoteness of Prior Offenses—9.32(m)**

Three of Respondent's prior disciplinary matters occurred before 1994.

### Analysis Under Case Law

■ Colorado Supreme Court case law applying the ABA *Standards* holds suspension is the presumptive sanction when a lawyer causes actual or potential injury by knowing-ly failing to perform services for a client or when a lawyer knowingly deceives a client. *People v. Barber*, 799 P.2d 936 (Colo.1990) (citing ABA *Standard* 4.42, the Colorado Supreme Court suspended a lawyer for six months for missing the statute of limitations after he claimed he had a better plan, but failed to adequately communicate it to his clients). *But see People v. Yaklich*, 744 P.2d 504 (Colo.1987) (one year suspension for neglect of custody support matter and failure to carry out client's objectives).

In consideration of the duty violated, Respondent's mental state, the actual and potential injury cause, and aggravating and mitigating factors, the Hearing Board concludes that a suspension for a period of one year and a day is warranted in this case.

## VI. CONCLUSION

Respondent told the Hearing Board that he had planned to retire before this time in his legal career, but now he cannot for financial reasons. Thus, he continues to practice. This causes the Hearing Board significant concern about protection of the public.

The People also expressed concern for the public's protection in this hearing. Yet, they have not asked that Respondent be disbarred. Indeed, the People's concern about Respondent's cognitive abilities appears to have been a factor in their decision not to seek disbarment. Nevertheless, Respondent's knowing conduct as a trusted legal advisor and counsel gives rise to a substantial question about the protection of the public.

Respondent's billing statements alone showed glaring errors and when asked to explain them, he could not. Indeed, one interpretation of these records is that they were recently fabricated so they could be presented at this hearing. The Hearing Board, however, cannot make that finding by clear and convincing evidence.

■ Though we cannot make such a finding, the Hearing Board is well aware that one of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The evidence

reveals a consistent pattern of Respondent's knowing failure to adequately communicate with his clients and perform services commensurate with the money he received. Accordingly, the Hearing Board finds that the imposition of a suspension for a period of one year and one day is the appropriate sanction in this case. If Respondent seeks reinstatement, he will have to prove a Hearing Board, by clear and convincing evidence, that he has been rehabilitated, has complied with all applicable disciplinary orders and rules, and is fit to practice law.

## VII. *ORDER*

The Hearing Board therefore **ORDERS**:

1. Donald Keith Smith, Attorney Registration Number 02542, is **SUSPENDED** from the practice of law for a period of **ONE YEAR AND ONE DAY.** The effective date of the suspension is **Monday, June 19, 2006.**

2. Donald Keith Smith **SHALL** pay restitution in the amount of $9,000.00 to Lesa and Larry Deland.

3. Donald Keith Smith **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days in which to file a response.